Eugene Y. Mar (State Bar No. 227071)
emar@fbm.com
Winston Liaw (State Bar No. 273899)
wliaw@fbm.com
Sushila Chanana (State Bar No. 254100)
schanana@fbm.com
Elizabeth M. Toledo (State Bar No. 312652)
ltoledo@fbm.com
Ashleigh Nickerson (State Bar No. 331056)
anickerson@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant Adobe Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SYNKLOUD TECHNOLOGIES, LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>ADOBE INC.,<br><br>             Defendant. | Case No. 3:20-cv-07760 WHA<br><br>**DEFENDANT ADOBE INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING CLAIM 10 OF U.S. PATENT NO. 8,868,690**<br><br>The Hon. William H. Alsup<br>Date: June 24, 2021<br>Time: 8:00 am<br>Courtroom: 12 |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

38027\14015040

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to the Court's Patent Showdown Scheduling Order (Dkt. 79), on June 24, 2021, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12, 19th Floor, of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William Alsup, Defendant Adobe Inc. ("Adobe") will and hereby does move for an order granting summary judgment on the following grounds: (i) Adobe does not infringe claim 10 of U.S. Patent No. 8,868,690 (the "'690 Patent") because the accused products do not meet the limitation "storage space of a predefined capacity allocated to a wireless device"; (ii) if the limitation "storage space of a predefined capacity allocated to a wireless device" is construed to cover allocation to a user, then claim 10 of the '690 Patent is invalid under 35 U.S.C. § 102 in view of Patent No. 8,117,644 ("Chaganti"), and (iii) claim 10 of the '690 Patent is invalid under 35 U.S.C. § 101.  This motion is based on this Notice of Motion; the memorandum of points and authorities below; the Declarations of Ulaganathan Sriramulu, Akshay Madan, Jon Weissman, Ph.D., and Eugene Mar attached hereto; all documents in this Court's file; and such other written or oral arguments as may be presented at or before the time this motion is heard by the Court.

## STATEMENT OF RELIEF REQUESTED

Adobe seeks an order granting summary judgment that Adobe does not infringe claim 10 of the '690 Patent, that in the alternative claim 10 of the '690 Patent is invalid under 35 U.S.C. § 102 in view of Chaganti, and that claim 10 of the '690 Patent is invalid under 35 U.S.C. § 101.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Adobe is entitled to summary judgment that Adobe does not infringe claim 10 of the '690 Patent with respect to the accused products.

2.      Whether, in the alternative, Adobe is entitled to summary judgment that claim 10 of the '690 Patent is invalid under 35 U.S.C. § 102 in view of Chaganti.

3.      Whether Adobe is entitled to summary judgment that claim 10 of the '690 Patent is invalid under 35 U.S.C. § 101.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

ii

38027\14015040

## <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.  INTRODUCTION...........................................................................................................1

II.  STATEMENT OF RELEVANT FACTS ......................................................................1

    A.  The Asserted Patent for the Patent Showdown ...................................................1

    B.  Factual Background Regarding the Accused Adobe Products.................................3

        1.  Overview of the Creative Cloud, Document Cloud, and Lightroom Bundles and Suites ...................................................................................3

        2.  For Subscriptions that Include Cloud Storage, the Cloud Storage is Provided to a User or Owner, and Never to a Device ..............................3

        3.  Overview of Upload and Download Functionality in the Creative Cloud, Document Cloud, and Lightroom Suites ......................................4

    C.  Parallel Litigations and IPRs Involving SynKloud's Related Patents .....................5

III.  LEGAL STANDARD ....................................................................................................6

IV.  ARGUMENT .................................................................................................................7

    A.  Summary Judgment Is Appropriate Because the Accused Products Do Not Allocate Storage "to the Wireless Device" or, in the Alternative, Claim 10 Is Invalid.................................................................................................................7

        1.  The Adobe Products Do Not Allocate Storage "to a Wireless Device".....................................................................................................7

            a.  Storage in ████████ is not allocated "to a wireless device"......................................................................................7

            b.  Storage in ██ is not allocated "to a wireless device".......................8

            c.  Real world testing further show that storage in ████████ and ██ are not allocated "to a wireless device.".............................9

            d.  SynKloud's own evidence shows that storage is not allocated "to a wireless device" ..........................................................9

        2.  The Phrase "Storage Space…Allocated to the Wireless Device" Means What It Says.............................................................................10

    B.  In the Alternative, If "Allocated to the Wireless Device" Is Construed to Mean "Allocated to a User" Then Summary Judgment Is Appropriate Because Claim 10 Is Invalid in Light of the Prior Art. ............................................11

    C.  Summary Judgment Is Appropriate Because Claim 10 Recites Unpatentable Subject Matter. ...................................................................................................16

        1.  Under the First Step of the *Alice* Test, Claim 10 Is Directed to the Abstract and Age-Old Concept of Storing or Retrieving Data from a Remote Location, including Transferring Data from One Remote Location to Another. ...............................................................................17

        2.  Claim 10 Does Not Recite Any Inventive Concept ...................................20

V.  CONCLUSION.............................................................................................................24

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Alice Corp. Pty. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ................................................................ *passim*

*Andersen Corp. v. Fiber Composites, LLC,*
    474 F.3d 1361 (Fed. Cir. 2007) ...............................................10

*Automated Tracking Sols., LLC v. Coca-Cola Co.,*
    723 F. App'x 989 (Fed. Cir. 2018) ...........................................23

*Brocade Commc'ns Sys., Inc. v. A10 Networks Inc.,*
    873 F. Supp. 2d 1192 (N.D. Cal 2012) .......................................7

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) ...............................................23

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .............................................................6,7

*Content Extraction & Transmission LLC v. Wells Fargo Bank National Ass'n*
    776 F.3d 1343 (Fed. Cir. 2014) ...........................................18,21

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
    815 F. App'x 529 (Fed. Cir. 2020) ..........................................17

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ...............................................17

*Exigent Tech., Inc. v. Atrana Sols., Inc.,*
    442 F.3d 1301 (Fed. Cir. 2006) .................................................6

*Intellectual Ventures I LLC v. Capital One Fin. Corp.,*
    792 F.3d 1363 (Fed. Cir. 2015) ...........................................22,23

*Intellectual Ventures I LLC v. Erie Indemnity Co.*
    850 F.3d 1315 (Fed. Cir. 2017) ...........................................18,22

*Intellectual Ventures I LLC v. Symantec Corp.*
    234 F. Supp. 3d 601 (D. Del. 2017) ..........................................19

*Johnston v. IVAC Corp.,*
    885 F.2d 1574 (Fed. Cir. 1989) .................................................7

*Mortg. Grader, Inc. v. First Choice Loan Servs.,*
    811 F.3d 1314 (Fed. Cir. 2016) ...............................................23

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

iv

38027\14015040

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ..............................................................................6

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
   379 F. Supp. 3d 857 (N.D. Cal. 2019) ...............................................................17,18

*In re Schreiber*,
   128 F.3d 1473 (Fed. Cir. 1997) ...........................................................................11

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) ...........................................................................11

*SynKloud Technologies, LLC v. HP Inc.*,
   490 F. Supp. 3d 806 (D. Del. 2020) ............................................................... *passim*

*TDM Am., LLC v. United States*,
   85 Fed. Cl. 774 (2009) .......................................................................................10

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) ...........................................................................11

*In re TLI Commc'ns*,
   823 F.3d at 614 .......................................................................................18,21,23

*WhitServe LLC v. Dropbox, Inc.*,
   No. 2019-2334, 2021 WL 1608941 (Fed. Cir. Apr. 26, 2021) ...............................19

**FEDERAL STATUTES**

35 U.S.C.
   § 101 ............................................................................................... *passim*
   § 102 ...................................................................................................11,24
   § 102(e) ..................................................................................................11

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 56 .........................................................................................6

**OTHER AUTHORITIES**

*Unified Patents, LLC v. SynKloud Technologies, LLC*,
   2021 WL 841367 (PTAB Mar. 5, 2021) .........................................6,11,14,16

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

v

38027\14015040

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

In this motion, Adobe presents two straightforward grounds for summary judgment in favor of Adobe.  The Court can resolve both grounds in the Patent Showdown because, after all the evidence has been considered, there can be no issue of material fact that judgment should be granted in favor of Adobe.  First, Adobe does not infringe claim 10 of the '690 Patent because the accused cloud storage functionality found in Adobe's accused products does not satisfy the claim limitation of a "storage space of a predefined capacity allocated to a wireless device."  The undisputed evidence shows that Adobe's accused products do not allocate cloud storage space to any wireless device.  Instead, Adobe's accused products are device-agnostic, meaning a user can access their cloud storage files in Adobe's accused products from any device, or even multiple devices, at any point in time.  Adobe's products organize their file operations by users and their file structures are associated with users.  There is no storage allocated on a device basis.  In the alternative, if SynKloud argues that the claim phrase at issue means the storage space is allocated to *a user* in an attempt to prove infringement, then claim 10 is invalid in view of a prior art reference known as Chaganti (U.S. Patent No. 8,117,644).  Chaganti was not before the PTO during the prosecution of the '690 Patent and, under such a reading of the claim language, it discloses every limitation of claim 10.

Second, claim 10 covers the abstract concept of storing or retrieving data in a remote location.  The claim recites conventional elements in the form of a server, wireless device, and a communication link for performing conventional tasks such as storing and retrieving data.  A long line of Federal Circuit cases compels the conclusion that this claim is invalid under Section 101, and the District of Delaware has already determined that a related SynKloud patent is invalid under Section 101 under the same line of reasoning.

**II.     STATEMENT OF RELEVANT FACTS**

    **A.     The Asserted Patent for the Patent Showdown**

For the Patent Showdown, both parties selected their "best" claims, with Adobe selecting independent claim 10 of the '690 Patent and SynKloud selecting dependent claim 9 from the same

1    patent.  The '690 Patent is a continuation of U.S. Patent No. 8,680,880, also asserted, and all five

2    asserted patents are part of the same patent family.  The '690 Patent purports to solve the "lack of

3    storage capacity configured on their wireless devices such as cell phone or PDA, which are usually

4    limited to 256 MB for PDA and much less for cell phone. To effectively solve this problem and let

5    users own multiple gigabytes (GB) of storage for their wireless devices as well as allowing the

6    users to use the GB storage for their multimedia applications, the storage of a server can be used

7    as the external storage for the wireless devices."  Dkt. 1, Ex. 2C at 2:26-34.

8         To provide this external storage for the wireless devices, the '690 Patent describes

9    partitioning storage on the server into a series of 4 GB volumes to "serve the maximum number of

10   wireless devices."  *See id.* at 4:1-4:26.  This is depicted in Figure 2 where the partitioned 4 GB

11   volumes are labeled as (11) and are found on the "storage system" (10).  *See id.* at Fig. 2.  The size

12   of each partitioned storage volume on the external storage system is set prior to the assignment of

13   the storage volumes to the wireless devices.  *See id.* at 4:1-4:32.

14        After the storage volumes have been set up and assigned, the volumes are ready for use.

15   The patent describes how the claimed storage server can download data from a remote web server

16   site into the allocated storage volumes, as depicted in Figure 3 (reproduced below).  *Id.* at 5:1-27.

17   The patent refers to this download process as "wireless out-band download."  *Id.* at 2:47-50.

18



19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

1   First, the user of the wireless device uses a web browser to access a remote web server ("ISP/ASP

2   Down Load Web Site" 15 of Figure 3) via path (a) to obtain download information,  such as the

3   file name and IP address of the website, about a file.  *Id.* at 5:7-15.  Next, the wireless device

4   sends the obtained download information to the storage server via path (b).  *Id.* at 5:16-18.  After

5   receiving the download information, the storage server (10) "sends a web download request" to

6   the remote web server (15).  The storage server (10) receives the file from the remote server via

7   path (c), as highlighted in yellow above.  *Id.* at 5:19-23.  This download along path (c) addressed

8   the purported problem the patent was trying to solve concerning limited storage space found on

9   wireless devices by allowing the storage server to directly download data from the remote web

10   server and bypass any need to store data on the wireless device, even temporarily.

11       **B.       Factual Background Regarding the Accused Adobe Products**

12           **1.       Overview of the Creative Cloud, Document Cloud, and Lightroom
                        Bundles and Suites**

14       Plaintiff accuses Adobe's cloud storage servers for the Creative Cloud, Document Cloud,

15   and Lightroom bundles or suites of products of infringing claim 10.  "Creative Cloud,"

16   "Document Cloud," and "Lightroom" are marketing names that Adobe uses to describe three

17   suites, or bundles, of different client applications and services.  Declaration of Akshay Madan

18   ("Madan Decl.") ¶3; Declaration of Ulaganathan Sriramulu ("Sriramulu Decl.") ¶3.  Generally

19   speaking, the Creative Cloud suite consists of creativity tools and software for artists and content

20   creators, such as Photoshop; the Document Cloud suite consists of office productivity tools and

21   software, like Acrobat; and the Lightroom suite is made up of photo editing software, including a

22   client application called Lightroom.  Madan Decl. ¶3; Sriramulu Decl. ¶4.  Some of the

23   applications in these suites are offered for download to a variety of devices, including desktop

24   computers and mobile clients, and in some cases are also offered via a web browser client.  Madan

25   Decl. ¶3; Sriramulu Decl. ¶4.

26           **2.       For Subscriptions That Include Cloud Storage, the Cloud Storage is
                        Provided to a User or Owner, and Not Allocated to a Device**

28       A user can subscribe to the entire Creative Cloud, Document Cloud, or Lightroom suites of

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY                    3                    38027\14015040
JUDGMENT - Case No. 3:20-cv-07760 WHA

products or choose to subscribe to any number of the individual applications or services within them.  Madan Decl. ¶4; Sriramulu Decl. ¶5.  If their specific subscription includes cloud storage, the user can store files remotely in addition to on their local device, so that those files can be accessed anywhere, from any device, by a user with the correct username and password.  Madan Decl. ¶3; Sriramulu Decl. ¶4.  The Adobe services, known internally as ███████████ ████████████████████████████████████████████████████████████ ██████ provide the cloud storage capabilities for the accused products.  Madan Decl. ¶2; Sriramulu Decl. ¶2.  ████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ███████████████████████████████  Madan Decl. ¶3; Sriramulu Decl. ¶4.  SynKloud accuses these server-side services of infringement in this case.

### 3.   Overview of Upload and Download Functionality in the Creative Cloud, Document Cloud, and Lightroom Suites

A user can upload files to and download files from their cloud storage from any device, provided they use appropriate client software and provide the correct username and password. Madan Decl. ¶4; Sriramulu Decl. ¶5.  For example, someone using Adobe Photoshop on their desktop computer can edit images and then save those to their Creative Cloud storage through the Photoshop application, and then later download and resume working on that image using Photoshop running on their iPad.  Or, the user can access that image through a web browser on a public computer.  As noted above, the ███████████████ provides the respective cloud storage functionality, depending on the client application.

When a user wants to upload a file to cloud storage using a particular client application, that client application will make a request to either █████████████████, depending on the application.  Madan Decl. ¶5; Sriramulu Decl. ¶6.  A user's files are ultimately stored on ███ ████████████████████████████████████████████████████████  Madan Decl. ¶6; Sriramulu Decl. ¶7.

Each piece of client-sourced data stored in ███████████, such as documents, photos, videos, etc., is called an ████████████████████████████

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA                    4                    38027\14015040

1   Madan Decl. ¶6; Sriramulu Decl. ¶7. 

2   Madan Decl. ¶7; Sriramulu Decl.

3   ¶7.

4   Madan Decl. ¶7; Sriramulu Decl. ¶7.

5

6   Madan Decl. ¶7; Sriramulu Decl.

7   ¶7.

8   Madan Decl. ¶¶8-9;

9   Sriramulu Decl. ¶8.

10   Madan Decl. ¶¶12-13; Sriramulu Decl. ¶7.

11

12   Madan Decl. ¶¶11, 13; Sriramulu Decl. ¶10.

13   **C.    Parallel Litigations and IPRs Involving SynKloud's Related Patents**

14       SynKloud has filed several lawsuits against different parties based on some or all of the

15   same patents at issue in this case.  For instance, on July 22, 2019, SynKloud brought a lawsuit

16   against HP Inc., asserting U.S. Patent No. 10,015,254 (the "'254 Patent," and which was

17   previously asserted here until SynKloud dismissed it as part of this patent showdown), U.S. Patent

18   No. 9,098,526 (the "'526 Patent", and which is a related patent that is not asserted against Adobe),

19   and two other unrelated patents, not asserted here.  HP moved to dismiss on the basis that the

20   asserted patents were invalid under 35 U.S.C. § 101 for claiming patent ineligible subject matter.

21   *SynKloud Technologies, LLC v. HP Inc.*, No. 19-1360-RGA, Dkt. 17 (D. Del. Dec. 6, 2019).  On

22   September 29, 2020, the Delaware court found that both the '254 and '526 Patents were invalid

23   because they "claim the abstract idea of storing and retrieving data from a remote location,

24   implemented on conventional, well-known hardware, adding no inventive concept."  *SynKloud*

25   *Technologies, LLC v. HP Inc.*, 490 F. Supp. 3d 806, 820 (D. Del. 2020).  The court noted that "the

26   claimed invention describes the well-known and longstanding practice of requesting an institution

27   to obtain data from remote locations and to store that data in storage space assigned to a specific

28   user."  *Id.* at 817.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY          5          38027\14015040
JUDGMENT - Case No. 3:20-cv-07760 WHA

1   In addition, a petitioner called Unified Patents, LLC filed an *inter partes* review (IPR)

2   challenging SynKloud's '526 Patent (the same '526 Patent asserted in the *SynKloud v. HP* suit),

3   which is a continuation of the '690 Patent and is based on the same specification and recites

4   similar claims.  On March 5, 2021, the Patent Trial and Appeal Board issued a final decision

5   holding all challenged claims of the '526 Patent invalid.  *See Unified Patents, LLC v. SynKloud*

6   *Technologies, LLC*, 2021 WL 841367 (PTAB Mar. 5, 2021) ("PTAB Decision").  The Board

7   found the challenged claims invalid in light of Chaganti.[1]

8   ## III.   LEGAL STANDARD

9   Summary judgment may be granted where the movant shows "there is no genuine issue as

10  to any material fact and that the movant is entitled to judgment as a matter of law."  *Celotex Corp.*

11  *v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56).  The moving party's burden is

12  met upon showing "that there is an absence of evidence to support the nonmoving party's case."

13  *Id.* at 326.  In other words, "[n]othing more is required than the filing of a summary judgment

14  motion stating that the patentee had no evidence of infringement and pointing to the specific ways

15  in which accused systems did not meet the claim limitations."  *Exigent Tech., Inc. v. Atrana Sols.,*

16  *Inc.*, 442 F.3d 1301, 1309 (Fed. Cir. 2006).  Once the moving party meets this burden, the

17  opposing party cannot rest on the mere allegation or denials of a pleading, but must "go beyond

18  the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to

19  interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine

20  issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324.  Nor may it rely solely on conclusory allegations

21  unsupported by facts.  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054-55 (Fed. Cir.

22  2001) (affirming summary judgment in absence of "theoretical and factual foundation" for

23  infringement allegations).

---

28  [1]   Chaganti is attached as Exhibit A to the Declaration of Jon Weissman ("Weissman Decl.").

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

6

38027\14015040

IV.    **ARGUMENT**

A.    **Summary Judgment Is Appropriate Because the Accused Products Do Not Allocate Storage "to the Wireless Device" or, in the Alternative, Claim 10 Is Invalid.**

Analysis of a summary judgment motion for non-infringement is a two-step process. "First, the claims of the patent must be construed to determine their scope." *Brocade Commc'ns Sys., Inc. v. A10 Networks Inc.*, 873 F. Supp. 2d 1192, 1200 (N.D. Cal 2012) (internal quotations omitted). "Second, a determination must be made as to whether the properly construed claims read on the accused device[s]." *Id.* An "accused infringer, [ ] is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed. Cir. 1989); *see also Celotex*, 477 U.S. at 322-23.

1.    **The Adobe Products Do Not Allocate Storage "to a Wireless Device"**

Claim 10 of the '690 Patent requires that "a storage space of a predefined capacity" be allocated "to a wireless device." The accused products do not allocate storage to any particular device, wireless or otherwise. It is undisputed that ████████████████████, which provide the cloud storage services for the Creative Cloud, Document Cloud, and Lightroom products suites and bundles, can be accessed by a user from ***any*** device, including across multiple devices that can change over time. Thus, ████████████████████████ ████████████████ storage is not allocated "to a wireless device."

a.    **Storage in ████████ is not allocated "to a wireless device"**

████████ does not allocate storage "to a wireless device." Instead, ████████ ████████████████████████ It is not, and cannot be, disputed that a user's storage in ████████ can be accessed from any device if a user has logged in with the appropriate client software. Madan Decl. ¶11.

The architecture and operation of ████████ further show that storage is not allocated "to a wireless device." ████████████████████████████████ ████████████████████████████████████████ *Id.* at ¶7. ████████████

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

7

38027\14015040



*Id.* at ¶8.

*Id.* at ¶¶7-11.

*Id.* at ¶8.

*Id.*

*Id.* at ¶11.

*Id.* at ¶12.

*Id.* at ¶¶12-13.

          **b.**      **Storage in ▮ is not allocated "to a wireless device"**

▮ also does not allocate any storage "to a wireless device."  Instead, ▮ ▮ It is undisputed that, ▮ can be accessed from any device after logging in with the appropriate client software and user login credentials.

      ▮ architecture and operation show that storage is not allocated "to a wireless device."

Sriramulu Decl. ¶7.

*Id.* at ¶7.

*Id.* at ¶10.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

8

38027\14015040

1    ████████████████████████████████████████████████████

2    ██████████████████████ *Id.* at ¶7. ███████████████████████████

3    ███████████████████████████████████ *Id.* at ¶¶7-10. █████████

4    ███████████████████████████████████████████████████ *Id.* at

5    ¶9. ████████████████████████████████████████████████

6            **c.**    **Real world testing further show that storage in** ████████

7                   **████ is not allocated "to a wireless device."**

8        Adobe's expert, Dr. Jon Weissman, has also personally tested the functionality of both

9    ███████████████████, via Creative Cloud and Lightroom client applications.  Specifically, Dr.

10    Weissman uploaded files from one device, his desktop computer, and accessed that same file from

11    his mobile phone and tablet.  Weissman Decl. ¶¶41-47.  By accessing his files in ███████████

12    █████████████████ from three different devices while logged in, Dr. Weissman's tests show that

13    storage is not allocated "to a wireless device."  If storage were allocated "to a wireless device," Dr.

14    Weissman would not have been able to access the same files from multiple different devices.

15            **d.**    **SynKloud's own evidence shows that storage is not allocated "to**

16                   **a wireless device"**

17        The evidence cited in SynKloud's infringement contentions supports Adobe's argument

18    and further confirms that storage for the Accused Products can be accessed from any device and is

19    not allocated "to a wireless device."  Out of four charts related to claim 10 of the '690 Patent,

20    SynKloud includes the following citation in three (i.e., for Creative Cloud, Document Cloud, and

21    Lightroom with Creative Cloud):

22

23    Your Adobe Creative Cloud account comes with online storage so that ==your assets

24    are available to you anywhere and on any device or computer.== You can preview

25    many creative asset types directly in a web browser on your computer, tablet, or

26    smartphone. These asset types include: PSD, AI, INDD, JPG, PDF, GIF, PNG,

       Photoshop Touch, and many others.

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY       9       38027\14015040
JUDGMENT - Case No. 3:20-cv-07760 WHA

SynKloud provides the following citation in its fourth chart, for Lightroom:

**Overview**

A Creative Cloud membership includes cloud-based storage, which ***allows you to access files stored in the cloud*** from any computer using a web browser. The cloud storage is made up of three different areas: Creative Cloud, Lightroom, and Document Cloud. Stored content can be accessed onlin+-e as follows.

- Creative Cloud - https://assets.adobe.com
- Lightroom - https://lightroom.adobe.com
- Document Cloud - https://documentcloud.adobe.com

SynKloud's own cited evidence confirms that a user's storage can be accessed "anywhere and *on any device or computer.*"  (emphasis added).  There is no dispute that storage in █████████ ██████████  which provide the cloud storage services for the Creative Cloud, Document Cloud, and Lightroom products suites and bundles, can be accessed by a user from ***any*** device, or even across multiple devices that can change over time, and thus storage is not allocated "to a wireless device."

### 2.     The Phrase "Storage Space…Allocated to the Wireless Device" Means What It Says

The plain meaning of the phrase "storage space of a predefined capacity allocated to a wireless device" in Claim 10 is exactly what it says—the storage space is allocated to a wireless device.  It does not mean that storage space is allocated on some other basis, such as on a user basis, because that would be inconsistent with the claim language. In fact, the inventor carefully drafted Claim 10 to refer to an allocation of storage space to "a wireless device" and, in a separate limitation, "a user" downloading a file.  This demonstrates that in drafting the claims the inventor distinguished between a "a wireless device" and "a user" of that wireless device.  *See, e.g., TDM Am., LLC v. United States*, 85 Fed. Cl. 774, 794 (2009) (rejecting argument "that two different words within a claim…have the same meaning") (citing *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007)).  This cannot be a mere typo either; the inventor drafted the claim to recite "a user," as opposed to "the user" or "said user," further showing his intent to introduce a new term in the final clause.  In fact, the claims found in two related patents asserted in this case—U.S. Patent Nos. 9,219,780 and 9,239,686—are drafted to require an

Farella Braun + Martel LLP
235 Montgomery Street, 17ᵗʰ Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

10

38027\14015040

1   exclusive allocation of storage space to a *user*. *See, e.g.,* Dkt. 1, Exs. 2D at claim 1 & 2E at claim

2   1. "There is a presumption that two independent claims have different scope when different words

3   or phrases are used in those claims." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369

4   (Fed. Cir. 2005). That presumption applies here to support that claim 10 of the '690 Patent was

5   drafted to mean exactly what it says—that a storage space is allocated to a wireless device, not to a

6   user a user of any wireless device.

       **B.**     **In the Alternative, If "Allocated to the Wireless Device" Is Construed to Mean**
7                 **"Allocated to a User" Then Summary Judgment Is Appropriate Because**
8                 **Claim 10 Is Invalid in Light of the Prior Art.**

9         Under Section 102 of the Patent Act, a claim is invalid as anticipated by a prior art

10   reference when that reference discloses every limitation of the claim either explicitly or inherently.

11   *See* 35 U.S.C. § 102; *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). The prior art

12   Chaganti patent discloses every limitation of claim 10 except the requirement that the storage

13   space is "allocated to a wireless device" under the plain meaning of that term. *See* Weissman

14   Decl. ¶¶61, 71, 93-94.[2]  In fact, the PTAB had determined that Chaganti disclosed nearly-identical

15   claim limitations in the related '526 patent, ultimately leading the PTAB to invalidate the related

16   '526 patent, as discussed in greater detail below and in Dr. Weissman's declaration. *See Unified*

17   *Patents, LLC v. SynKloud Technologies, LLC*, 2021 WL 841367 (PTAB March 5, 2021). If

18   SynKloud argues that the phrase "allocated to a wireless device" actually means that the storage is

19   allocated to a user who can then access it from any device, then Chaganti discloses and anticipates

20   every limitation of claim 10 and renders it invalid. Weissman Decl. ¶¶93-94; *see, e.g.*, *Telemac*

21   *Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1328-30 (Fed. Cir. 2001) (affirming

22   summary judgment of invalidity where prior art reference disclosed every limitation of the

23   challenged patent claims).

24         Chaganti describes a method and system that allows a user computer (e.g., a wireless

25   device such as a Palm Pilot as disclosed in Chaganti) to communicate over a network with a

---

[2]   Chaganti is based on a continuation of a patent application filed on August 5, 2000. Chaganti
(Certificate of Correction).  It therefore constitutes prior art to the '690 Patent under 35 U.S.C.
§ 102(e)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

11

38027\14015040

1   remote server computer to create and access an online personal library for storing digital

2   information.  *See, e.g.*, Chaganti at 2:20-27, 3:9-11, 5:54-58; 7:60-8:12, 17:19-24, 18:13-21,

3   Fig. 1.  Once the user establishes a storage space to hold information, the server computer assigns

4   an address (e.g., http://library.serviceprovider.com) that the user can use to "upload digital items to

5   the library from any computer such as his client computer."  *Id*. at 3:50-58.  In addition, Chaganti

6   states that "[t]he user may direct a third party to transmit a digital item to the user's library by

7   giving the third party his library's identifier."  *Id*. at 3:58-60.

> For example, the user may request a service such as e-books or other type of
> service by providing an identifier of the digital item, a destination address, which is
> a library address, an account name, and/or a password if necessary.  The user or the
> third party may then manually or via an automatic process send the digital item to
> the library via methods to transmit data such as E-mail, hyper text transfer protocol,
> file transfer protocol, Unix-to-Unix-Copy program (UUCP), or by dragging and
> dropping the digital item into the library.

13   *Id*. at 3:60-4:3; *see also* 18:39-51.

14   Except for the limitation of "allocating to a wireless device" (under its plain meaning),

15   Chaganti discloses every limitation of claim 10.  *See* Weissman Decl. ¶¶61-94.  Chaganti discloses

16   "a server" as recited in the claim's preamble, which Chaganti refers to as "server computer 100."

17   Chaganti at 3:9-11, 6:55-7:8, 8:64-9:2, 16:66-67, Fig. 1.  Chaganti also discloses "a plurality of

18   storage devices" as recited in the claim.  Chaganti states that the remote storage space for the

19   user's personal library "may be contiguous space in one physical device, or it could be ***distributed***

20   ***over a large number of physically separate disks***."  *Id*. at 21:14-16.  Chaganti also discloses that

21   "at least a first one of the storage devices is configured with a storage space of predefined

22   capacity" as claimed.  Indeed, Chaganti expressly states that in an embodiment of the invention,

23   "the user allocates a ***pre-determined amount*** of storage space on a storage device such as a hard

24   disk."  *Id*. at 3:9-19.  The storage space can be accessed by "user computer 104," which can be "a

25   Palm Pilot" or other wireless device.  *Id*. at 7:60-8:12, Fig. 1.  Chaganti discloses allowing the

26   "wireless device via a wireless link access to the storage space" as recited in claim 10.  *Id*. at 4:4-

27   5, 11:58-61, 14:51-54, 17:21-24, 21:64-65, Fig. 1.  And it discloses allowing the user to "store"

28   and "retrieve" data from the online personal library—which is "remotely located with respect to

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

12

38027\14015040

1    the wireless device"—as recited in claim 10.  *Id*. at 4:4-14, 18:12-24, 18:46-51, 21:65-22:1, 24:9-

2    10.

3          In addition, Chaganti expressly discloses "allowing the user on the wireless device to

4    download a file from a remote web server directly into the allocated storage space" as recited in

5    claim 10.  For instance, Chaganti's Figure 5 (reproduced and annotated below) illustrates an

6    embodiment that permits the user to create a request to save a file from a remote web server

7    directly into the user's online personal library.  Chaganti at 19:1-10, Fig. 5 ("Contents of a

8    Request to Add an Item to a User Library").

9



20   As illustrated, the user can identify "a source from where the item is to be copied" (i.e.,

21   http://www.source.com/1/2/b/Movie.mpg) "along with any required password, authorization, or

22   authentical information that is required to ***retrieve the digital item from the source and securely***

23   ***transmit and store it in the library*.**  *Id*. at 19:2-10.  Chaganti also illustrates and discusses an

24   embodiment in which the user can drag-and-drop content on a remote web server directly to the

25   user's online personal library.  *Id*. at 19:23-36, 20:2-20, Fig. 6.

26         The following chart identifies evidence showing that every limitation of claim 10—other

27   than the requirement that the storage space is "allocated to a wireless" device—is expressly

28   disclosed by Chaganti.  The evidence includes citations to Chaganti as well as the declaration of

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY          13          38027\14015040
JUDGMENT - Case No. 3:20-cv-07760 WHA

Dr. Weissman and the PTAB decision in *Unified Patents, LLC v. SynKloud Technologies, LLC*, 2021 WL 841367 (PTAB March 5, 2021)[3] in which the Board made specific factual findings about what Chaganti discloses.

| Claim 10 | Chaganti |
| --- | --- |
| A server comprising: | Chaganti's "server computer 100" can be used to create "an online personal library" and constitutes the claimed "server." Chaganti at 3:9-11, 6:55-7:8, 8:64-9:2, 16:66-67, Fig. 1; Weissman Decl. ¶¶63-64. |
| a plurality of storage devices; | Chaganti expressly states that the storage space "may be contiguous space in one physical device, or it could be ***distributed over a large number of physically separate disks***." Chaganti at 21:14-16; *see also id.* at 3:30-40; PTAB Decision at *13 (finding Chaganti discloses a limitation requiring that "the storage server controls a ***plurality of storage devices***"); Weissman Decl. ¶¶66-67. |
| wherein at least a first one of the storage devices is configured with a storage space of a predefined capacity allocated to a wireless device and | Chaganti expressly states that when creating the online library "the user allocates a ***pre-determined amount of storage space*** on a storage device such as a hard disk." Chaganti at 3:9-19; *see also id.* at 9:46-49, 17:45-48 ("user 103 is presented with a series of web pages using which the user 103 creates or allocates a ***pre-determined amount of storage space*** on the database 108 or a storage device coupled to the server 100"); PTAB Decision at *8 (Chaganti describes "that the 'pre-determined amount of storage' ***is a 'predefined capacity'*** as claimed"); Weissman Decl. ¶¶69-71. |
| allow the wireless device via a wireless link access to the storage space, | The user can access the online personal library using "user computer 104," which can be "a Palm Pilot" or other wireless device. Chaganti at 3:50-58, 5:54-58, 7:13-23, 7:60-8:12; PTAB Decision at *7 ("Chaganti teaches '[a] wireless device,'.....").  Chaganti describes establishing a communication link between the user's device (which can be a wireless device) and the online personal library. *Id.* at 4:4-5, 11:58-61, 14:51-54, 17:21-24 ("[A] user 103 (operating a user computer 104) ***establishes a connection*** with a data communication network 102. Then the user computer 104 ***establishes a link*** with the server 100 and creates an online personal library."), 21:64-65 ("requester's device 106 may first ***establish a connection*** with the server 100"); *see also* PTAB Decision at *8; Weissman Decl. ¶¶73-74. |
| said access to the storage space including | Chaganti discloses storing files to and retrieving files from the user's online personal library. Chaganti at 3:50-58 (the user can "***upload*** |

[3] As noted below in Section IV.C.1, the '526 claims at issue in this IPR are nearly identical to claim 10 of the '690 Patent here.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

14

38027\14015040

| Claim 10 | Chaganti |
|---|---|
| to store a data object therein or retrieve a data object therefrom, | *digital items to the library* from any computer such as his client computer"), 3:58-60 ("[t]he user may direct a third party to *transmit a digital item to the user's library* by giving the third party his library's identifier"), 4:4-14, 18:12-24, 18:46-51, 21:65-22:1 (user can "make a request for a digital item stored in the library" or use "a web page to search for" the item and the server will "*deliver the requested digital item* to the requester's computer"); 24:9-10 ("The *digital item is downloaded* to the requester's device 106 directly."); *see also* PTAB Decision at *10 ("[I]n Chaganti, the user may access the online personal library over the network and *store data items* in the library or *retrieve data items* therefrom."); Weissman Decl. ¶¶76-78. |
| wherein the storage space is remotely located with respect to the wireless device, and | Chaganti's "server 100" can be configured as a remote "web server" and the user can create an "online personal library" accessed over a network such as the Internet. Chaganti at 3:9-11, 3:30-34, 6:55-60, 7:5-8, Fig. 1. The server is therefore remotely located with respect to the wireless device as claimed. Weissman Decl. ¶¶80-81. |
| wherein the server is configured to couple with the wireless device | As described in connection with the first "wherein" clause, Chaganti discloses establishing a communication link between the user's device (which can be a wireless device) and the online personal library. Chaganti at 7:13-23, 7:60-8:12, 17:21-24, 21:64-65. Via the communication link the server is "couple[d]" with the wireless device. Chaganti at 19:16-18 ("the user computer 104 and the server 100 may be *coupled to* homogeneous or heterogeneous networks; *see also* PTAB Decision at *10 ("Chaganti teaches 'couple with the storage server across the wireless link' …."); Weissman Decl. ¶83-84. |
| for allowing a user on the wireless device to download a file from a remote web server directly into the allocated storage space. | Chaganti explains that "the user may request a service such as e-books or other type of service by providing an identifier of the digital item, a destination address, which is a library address, an account name, and/or a password if necessary" and that "*the third party may then* manually or via an automatic process *send the digital item to the library* via methods to transmit data such as E-mail, hyper text transfer protocol, file transfer protocol, Unix-to-Unix-Copy program (UUCP), or by dragging and dropping the digital item into the library." Chaganti at 18:39-51; *see also id.* at 3:58-4:3, 18:52-63. Figure 5 illustrates an interface allowing the user to save a file from a remote web server directly into the user's online personal libarary. *Id.* at 19:1-10. Figure 6 illustrates copying data from a remote website to the user's online personal library. *Id.* at 19:23-36, 20:2-20. *See also* PTAB Decision at *10 ("Chaganti taught a user initiating an out-of-band download (storing) of 'digital item X' (a data object) from 'source computer 610' (a remote server) across 'network 102' e.g. 'the Internet' (across a network) into a specific area of the online library of 'target computer 100,' 'the server computer that has the library' (i.e. |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - Case No. 3:20-cv-07760 WHA

15

38027\14015040

| Claim 10 | Chaganti |
|----------|----------|
| | into the assigned storage space).”), *10 (“Chaganti teaches storing the data object 'in response to the user from the wireless device perform[ing] the operation for downloading the file ***from the remote server into the assigned storage space***.”); Weissman Decl. ¶¶86-91. |

As shown in the chart above, Chaganti discloses every limitation of claim 10 except the requirement that the storage space be “allocated to a wireless device” (based on the plain meaning of that term). Weissman Decl. ¶92. However, if the term “allocated to a wireless device” is instead construed to mean that the storage space is allocated to a user regardless of device, then Chaganti discloses every limitation of the claim because Chaganti expressly discloses that the user can access his or her online personal library from any network connected device. *Id.* at ¶93. For example, Chaganti states that the user’s online personal library can be assigned an Internet address and that the “user is then allowed to upload digital items to the library ***from any computer***….” Chaganti at 3:50-58; *see also id.* at 18:19-21 (“The user 103 uploads digital items to the library ***from any computer*** such as his user computer 104.”). In Chaganti, the storage space is allocated to the user. *Id.* at 20:64-66 (“[T]he server 100 executes an appropriate program to increase the ***storage space allocated to the user*** 103.”). Therefore, if the term “allocated to a wireless device” is construed to mean that the storage is allocated to the user who can access it from any wireless device, then—in the alternative—Chaganti discloses every limitation of claim 10 and renders it invalid. Weissman Decl. ¶94.

### C.  Summary Judgment Is Appropriate Because Claim 10 Recites Unpatentable Subject Matter.

Claim 10 of the ’690 Patent recites patent-ineligible subject matter under 35 U.S.C. §101 because the claim describes the storing and retrieving of data from a remote location. Under the U.S. Supreme Court's decision in *Alice v. CLS Bank*, courts apply a two-step test to determine whether patents claim patent-ineligible subject matter under 101. First, courts inquire whether the claims at issue are directed to one of the patent-ineligible concepts consisting of abstract ideas, laws of nature, or natural phenomena. *Alice Corp. Pty. v. CLS Bank Int’l*, 573 U.S. 208, 217 (2014).  If the courts determine in the first step that the patent claim is directed to a patent-

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT’S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

16

38027\14015040

ineligible concept, the second step requires courts to "search for an 'inventive concept' -- i.e., an element or combination of elements that is "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18.

Here, claim 10 fails both steps.  Claim 10 fails the first step because the claim describes nothing more than the abstract concept of storing or retrieving data from a remote location, including transferring data from one remote location to another.  It fails the second step because claim 10 merely recites generic or well-known components, such as servers and wireless devices as the specification of the '690 Patent admits, and lacks any inventive concept.  This analysis is further supported by a line of Federal Circuit cases invalidating patents under Section 101 for similarly claiming the storing and retrieving of data from a remote storage location.  Indeed, Judge Andrews from the District of Delaware arrived at the same conclusion under Section 101 last year in invalidating claims from the related '526 and '254 Patents, which are both continuations of the '690 Patent and have strikingly similar claim language.  *See SynKloud v. HP*, 490 F. Supp. 3d at 812-20.  While the *HP* decision is not binding on this Court, its reasoning regarding related patent claims covering the same invention further supports Adobe's arguments here.

> **1.    Under the First Step of the *Alice* Test, Claim 10 Is Directed to the Abstract and Age-Old Concept of Storing or Retrieving Data from a Remote Location, including Transferring Data From One Remote Location to Another.**

As this Court has counseled when addressing step 1 of the *Alice* test, "courts have generally begun by 'compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases.'" *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 868 (N.D. Cal. 2019) (*quoting Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016), *aff'd sub nom. Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020)).  Claim 10 merely claims a server comprising of a plurality of storage devices, where at least one of the storage devices has a storage space of predefined capacity allocated to a wireless device.  The claimed server further provides access for storing or retrieving of data and allows a user to use a wireless device to download a file from a remote web server directly into the allocated storage space.  The only other requirement of Claim 10 is that the storage server be

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

17

38027\14015040

remotely located from the wireless device.  This claim plainly attempts to patent the abstract concept of storing or retrieving data from a remote location, including transferring data from one remote location to another.

The abstract nature of Claim 10 is also apparent when the claim is compared to a number of Federal Circuit cases finding similar patent claims to be patent-ineligible for claiming the abstract concept of storing and retrieving information, including:

- In *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the Federal Circuit invalidated, under Section 101, a patent that claimed "systems and methods for accessing a user's remotely stored data and files."  850 F.3d 1315, 1329 (Fed. Cir. 2017).  In applying step 1 of the *Alice* test, the Federal Circuit found that "[r]emotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet."  *Id.* at 1330 (Fed. Cir. 2017).

- In *In re TLI Communications LLC Patent Litigation*, the Federal Circuit invalidated a patent under Section 101 directed towards "classifying and storing digital images in an organized manner."  823 F.3d 607, 613 (Fed. Cir. 2016).  The Federal Circuit found that "attaching classification data, such as dates and times, to images *for the purpose of storing those images* in an organized manner is a well-established 'basic concept' sufficient to fall under Alice step 1."  *Id.* (emphasis added).  The Court also concluded under step 1 of the *Alice* test that describing a server in terms of generic functions such as storing, receiving, and extracting data proved that the patent claim was directed toward an abstract concept and not a solution to a technological problem.  *Id.*

- The Federal Circuit reached an identical conclusion in *Content Extraction & Transmission LLC v. Wells Fargo Bank National Ass'n,* finding that "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions."  776 F.3d 1343, 1347 (Fed. Cir. 2014); *see also Ornicus,* 379 F. Supp. 3d at 874 (invalidating patent claims directed towards transmitting and retrieving data because they claimed an abstract concept).

Courts have also frequently invalidated patents directed towards copying data from one

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

18

38027\14015040

remote location to another under Section 101 for claiming an abstract concept:

- The Federal Circuit recently held that "a system for onsite storage of a backup copy of Internet-based data" was an abstract concept. *WhitServe LLC v. Dropbox, Inc*., No. 2019-2334, 2021 WL 1608941 at *3-4 (Fed. Cir. Apr. 26, 2021).

- Similarly, in *Intellectual Ventures I LLC v. Symantec Corp*., a claim for copying data to a remote location was invalidated because the claim was directed to "the abstract idea of backing up data." 234 F. Supp. 3d 601, 607 (D. Del. 2017), *aff'd*, 725 F. App'x 976, 978 (Fed. Cir. 2018).

Finally, the abstract and patent-ineligible nature of Claim 10 of the '690 Patent is supported by Judge Andrews' ruling in the *SynKloud v. HP* litigation in the District of Delaware, where the court found that the asserted claims from the '254[4] and '526 Patents, both of which are continuations of the '690 Patent asserted here, were invalid under Section 101. *SynKloud v. HP*, 490 F. Supp. 3d at 812-20. In particular, the Delaware court found that the '254 and '526 Patents "claim the abstract idea of storing and retrieving data from a remote location, implemented on conventional, well-known hardware, adding no inventive concept." *SynKloud v. HP*, 490 F. Supp. 3d at 820. That finding equally applies here.

As highlighted in the chart shown below, claim 10 of the '690 Patent is nearly identical in all material aspects to claim 1 of the '526 Patent[5] that the *HP* court found to be invalid.[6]

| Ineligible Claim 1, 526 Patent | Claim 10, 690 Patent |
|---|---|
| A wireless device comprising: at least one cache storage, one wireless interface, and program code configured to cause the wireless | A server comprising: a plurality of storage devices; |

---

[4] SynKloud initially asserted claims 9-15 from '254 Patent against Adobe and only chose to withdraw all claims from that patent without prejudice after receiving Judge Andrews' ruling invalidating claims 1-8 of the '254 patent and in anticipation of this Patent Showdown. *See* Dkt. 89. However, SynKloud has yet to amend its complaint to drop the '254 Patent from the case.

[5] The similarity between the claims in the entire family is further evidenced by Judge Andrews' combining of his analysis on the '526 and '254 patents, where he noted that "[b]ecause the asserted claims of the '526 and '254 patents are 'substantially similar and linked to the same abstract idea,' I will discuss them together." *SynKloud v. HP*, 490 F. Supp. 3d at 813.

[6] The color coding shows the similar claim language found in each claim.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

19

38027\14015040

| device to: | |
|---|---|
| establish a wireless link for the wireless device access to a storage space of a predefined capacity assigned exclusively to a user of the wireless device by a storage server, and couple with the storage server across the wireless link to carry out a requested operation for remote access to the assigned storage space in response to the user from the wireless device performed the operation, | wherein at least a first one of the storage devices is configured with a storage space of a predefined capacity allocated to a wireless device and allow the wireless device via a wireless link access to the storage space, |
| wherein the operation for the remote access to the assigned storage space comprises storing a data object therein or retrieving a data object therefrom, the storing of a data object including to download a file from a remote server across a network into the assigned storage space through utilizing download information for the file stored in said cache storage in response to the user from the wireless device performed the operation for downloading the file from the remote server into the assigned storage space. | said access to the storage space including to store a data object therein retrieve a data object therefrom, wherein the storage space is remotely located with respect to the wireless device, and wherein the server is configured to couple with the wireless device for allowing a user on the wireless device to download a file from a remote web server directly into the allocated storage space. |

While claim 1 of the '526 Patent is drafted to describe the wireless device and claim 10 of the '690 Patent is drafted to describe the server, the claimed invention in both claims are nearly identical. As a result, claim 10 of the '690 Patent suffers from the same fatal abstract concept defects that Judge Andrews found in the '526 and '254 Patents. In the *SynKloud v. HP* case, the Court found that the '526 and '254 Patents "essentially describe a wireless device that couples or communicates with a remote storage server and stores or retrieves data from that server. Both claims describe storing data in or retrieving data from a remote location. Thus, the claimed invention describes the well-known and longstanding practice of requesting an institution to obtain data from remote locations and to store that data in storage space…." *Id.* at 817. When one examines the claim language of Claim 10, it is readily apparent that Claim 10 covers the same abstract concept as the invalidated claims of the related '526 and '254 Patents.

### 2. Claim 10 Does Not Recite Any Inventive Concept

Claim 10 also fails Step Two of *Alice* test because it recites only generic computer and

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

20

38027\14015040

1   networking components, such as servers, wireless devices, wireless links, and remote web servers,

2   and no arrangement of those elements that would constitute a technological improvement.

3   "[G]eneric computer components" are "insufficient to add an inventive concept to an otherwise

4   abstract idea." *In re TLI Commc'ns*, 823 F.3d at 614.  "It is well-settled that mere recitation of

5   concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract

6   idea" where those components merely perform their "well-understood, routine, conventional"

7   functions."  *Id.* at 613.  "For the role of a computer in a computer-implemented invention to be

8   deemed meaningful in the context of this analysis, it must involve more than performance of

9   'well-understood, routine, [and] conventional activities previously known to the industry.'"

10  *Content Extraction*, 776 F.3d at 1347-48 (*quoting Alice*, 134 S.Ct. at 2359).

11          Claim 10 and the '690 Patent provide no specificity beyond reciting and disclosing generic

12  components to implement the alleged invention of providing external storage to wireless devices.

13  The '690 Patent does not describe anything beyond conventional and routine roles for its claimed

14  servers, wireless devices, and remote web servers. The Federal Circuit has previously determined

15  that a server that "administers digital images using a known arbitrary data bank system" failed to

16  add an inventive concept because "the server simply receives data, extracts classification

17  information …. from the received data, and stores the digital images … taking into consideration

18  the classification information."  *In re TLI Commc'ns*, 823 F.3d at 614 (ellipses in original).  The

19  server in claim 10 is even more generic and less specific than the one in *In re TLI* because the

20  claimed server simply allocates storage and allows a wireless device access to store and retrieve

21  content.  These are the most basic and generic functions of a storage server.  *See id.*; *Alice,* 573 U.S.

22  at 225; *see also* Weissman Decl., ¶96.  The other ancillary components of claim 10—the remote

23  web server that is the source of the file that is downloaded, and the wireless device that can access

24  the storage space on the server through the Internet and initiate the download of the file from the

25  remote web server directly into the storage space—perform equally generic and routine functions.

26  *Id.*

27          The patent specification fares no better, describing a "wireless device" as a generic "cell

28  phone or PDA" and referring to "internal storage of a system" as generic "hard disk drives,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

21

38027\14015040

1    memory sticks, [and] memory."  Dkt. 1, Ex. 2C, at 1:27-30; 2:27-28.  The inventor agreed during

2    his deposition that he was referring to existing wireless devices on the market in his patents.  Mar

3    Decl., Ex. A at 82:1-7.  The patent specification states that the external storage that serves as the

4    storage space for the claimed invention "could be magnetic hard disk drives, solid state disk,

5    optical storage drives, memory card, etc. and could be in any form such as Raid, which usually

6    consists of a group of hard disk drives."  *Id*. at 1:38-41.  The specification further explains that

7    "the storage connection media could be any kind of cables, such as SCSI cable, IP cable, Fiber

8    cable etc. or could be wireless communication media."  *Id*. at 3:41-43.  The "wireless

9    communication media" is simply described as the Internet, Intranet, or a generic local area

10   network (LAN).  *Id*. at 3:3-4.  By failing to describe any alleged improvement over any of these

11   conventional computer storage and networking components, claim 10 is not directed at any

12   specific improvement in computer capabilities.

13          The specification's description of the components, such as the wireless devices and

14   storage, in claim 10 are even more generic and conventional that what the Federal Circuit found to

15   be insufficient under Step 2 in *Intellectual Ventures v. Erie*.  In that case, the patent holder argued

16   that "[a]ll of the claims are limited to a specific use of multiple pointers to retrieve the user-

17   specific data via a mobile interface in a network with a server and local de[v]ice," and thus, the

18   claim contained an inventive concept. 850 F.3d at 1331.  The Federal Circuit rejected that

19   argument because "receiving transmitted data over a network and displaying it to a user merely

20   implicates purely conventional activities that are the "most basic functions of a computer" and

21   "pointers are conventional, as is the manner in which the claims employ them in conjunction with

22   the mobile interface."  *Id.*  Claim 10 and the '690 Patent contain even less detail than the

23   *Intellectual Ventures* patent about the role and function of the claimed components, and thus,

24   claim 10 does not contain any inventive concept that would salvage its abstract concept from

25   patent-ineligibility.

26          The lack of inventive concept in Claim 10 is further supported by Judge Andrews' findings

27   in the *SynKloud v. HP* case.  Judge Andrews determined that the '254 and '526 Patents, which

28   have an identical specification to the '690 Patent, only recited "generic and conventional computer

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

22

38027\14015040

1   components and functions," citing to the same wireless devices, internal storage, external storage,

2   and wireless communication link disclosures described here.  *SynKloud v. HP*, 490 F. Supp. 3d at

3   814-15; *see also Automated Tracking Sols., LLC v. Coca-Cola Co.,* 723 F. App'x 989, 995 (Fed.

4   Cir. 2018) (affirming ruling that asserted patent was invalid under Section 101 because

5   specification confirmed that the claimed components were conventional).  The same conclusion

6   holds true here as well.

7          At a functional level, claim 10 also only recites generic functions.  Storing, retrieving, and

8   transferring data are some of the most basic functional elements of any conventional computer and

9   fails to add any inventive concepts.  In fact, the Federal Circuit found that servers "storing,

10  receiving, and extracting data" were "generic computer functions," when analyzing a patent that

11  claimed priority back to 1997—6 years before the priority date for SynKloud's '690 Patent.  *In re*

12  *TLI*, 823 F.3d at 612; *see also Mortg. Grader, Inc. v. First Choice Loan Servs.,* 811 F.3d 1314,

13  1324-25 (Fed. Cir. 2016) (finding that storing and retrieving data are not inventive concepts);

14  Weissman Decl. ¶98.  The inventor agreed that the claimed server just performs retrieving and

15  storing functions: "That's what's a server designed for, right, for, for people to storing, for people,

16  also for people retrieving."  Mar Decl., Ex. A at 142:25-144:12.  Using the Internet to

17  communicate between a wireless device and a server is equally routine and generic.  "That a

18  computer receives and sends information over a network—with no further specification—is not

19  even arguably inventive."  *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir. 2014);

20  *Intellectual Ventures I LLC v. Capital One Fin. Corp*., 792 F.3d 1363, 1368 (Fed. Cir. 2015)

21  ("communication medium" is a "generic computer element[ ]").

22         Nor can SynKloud plausibly assert that the components recited in Claim 10 are used in a

23  different way to achieve a desired result or that there are any improvements in the combination of

24  these elements.  Claim 10 and the specifications of the '690 Patent are devoid of any discussion

25  about how the servers, remote web servers, wireless devices, or wireless links are used in any non-

26  conventional manner.  Weissman Decl. ¶96.  Judge Andrews in the *HP* case reached the same

27  conclusion by analyzing the identical specification and near-identical claim language in the related

28  '254 and '526 Patents.  *SynKloud v. HP*, 490 F. Supp. 3d at 818.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - Case No. 3:20-cv-07760 WHA

23

38027\14015040

1    Because claim 10 fails to add any inventive concept, this claim also fails Step 2 of the

2  *Alice* test.  As a result, claim 10 is invalid under Section 101 for claiming the abstract concept of

3  storing and retrieving data from a remote location, including transferring data from one remote

4  location to another.

5  **V.      CONCLUSION**

6    For the foregoing reasons, Adobe requests that the Court enter summary judgment that (i)

7  Adobe does not infringe claim 10 of the '690 Patent; (ii) in the alternative, claim 10 of the '690

8  Patent is invalid under 35 U.S.C. § 102 in view of Chaganti; and (iii) claim 10 of the '690 Patent is

9  unpatentable under 35 U.S.C. § 101.

10 Dated:  May 13, 2021                    Respectfully submitted,

11

12                                         FARELLA BRAUN + MARTEL LLP

13
                                           By:        */s/ Eugene Y. Mar*
14                                              Eugene Y. Mar (State Bar No. 227071)

15                                              emar@fbm.com
                                                Winston Liaw (State Bar No. 273899)
16                                              wliaw@fbm.com
                                                Sushila Chanana (State Bar No. 254100)
17                                              schanana@fbm.com
                                                Elizabeth M. Toledo (State Bar No. 312652)
18                                              ltoledo@fbm.com
                                                Ashleigh Nickerson (State Bar No. 331056)
19                                              anickerson@fbm.com
                                                Farella Braun + Martel LLP
20                                              235 Montgomery Street, 17th Floor
                                                San Francisco, California 94104
21                                              Telephone: (415) 954-4400
                                                Facsimile: (415) 954-4480
22
                                                *Attorneys for Defendant Adobe Inc.*
23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

DEFENDANT'S MOTION FOR SUMMARY          24                          38027\14015040
JUDGMENT - Case No. 3:20-cv-07760 WHA